**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. <u>5:12-cv-00522-UATC-PRL</u> |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOES 1-46, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO SHOW CAUSE ORDER**

**I.      INTRODUCTION**

Plaintiff respectfully requests the Court find joinder of the Defendants proper.  Under both the Federal Rules of Civil Procedure and Supreme Court precedent, joinder of parties should be liberally construed in order to "secure the just, speedy, and inexpensive determination of every action and proceeding."  *See Fed. R. Civ. P. 1.*  Although this Court has discretion to control its docket and sever cases based upon discretionary factors, respectfully, that discretion should be tempered by the purposes of the Rule and the Copyright Act.  Regarding the Copyright Act, it was expressly amended in 1999 to deter on-line infringement.  Deterrence only works if there is a real possibility that an infringer may be sued.  To make that possibility real, joinder is necessary.

Other courts that have seriously analyzed the issues with the technology involved and applied the law to the facts have found joinder to be proper.  *See e.g. Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y. 2012).  "[T]he nature of the technology compels the conclusion that defendants' alleged transactions were part of the same 'series of transactions or occurrences.'" *Id.* at *4.  The Honorable Judge Whittemore also held, that "because joinder rules

1

are interpreted broadly, the claims are 'logically related,' and they constitute a series of transactions or occurrences sufficient for permissive joinder under Rule 20(a)(2)." *Media LLC v. John Does 1-28*, 8:12-cv-1667-T-27MAP, Order [CM/ECF 22], p.9.   Here, the Defendants' conduct through the BitTorrent technology compels the conclusion that joinder is proper.

Further, joinder of putative defendants in BitTorrent copyright infringement cases, especially at early stages of the litigation, promotes judicial efficiency and does not prejudice the Defendants.   Conversely, severing the Doe Defendants imposes a significant hardship and prejudice on Plaintiff in trying to enforce its copyrights in an era of rampant on-line piracy. Plaintiff asks that this Court not consider it differently because of the content of the copyrighted work or the proliferation of law suits.   As the Central District of Illinois recently noted, "the proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people." *Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 (C.D. Ill. 2012).   Plaintiff Malibu Media brings suit against 1% of the people who steal its content and it deserves the same rights as any other corporate entity.

## II.   JOINDER IS PROPER

Fed. R. Civ. P. 20 permits joinder when plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action."   Rule 20(a) not only permits joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.   Plaintiff has done both here.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal

joinder procedures." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (*quoting 6A Wright, Miller & Kane § 1581*). "Here, the nature of the technology <u>compels the</u> <u>conclusion</u> that defendants' alleged transactions were part of the same 'series of transactions or occurrences.' Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied." *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y. 2012) (emphasis added). As explained more fully herein, Plaintiff's Complaint alleges more than "merely committing the same type of violation in the same way" because the operation of the BitTorrent protocol necessitates a synergistic effort by peers in a swarm.

### A.  The Infringement Occurred Through a Series of Transactions

Under Fed. R. Civ. P. 20(a), "series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

### i.  Plaintiff Properly Pled a Series of Transactions

Plaintiff alleges that its investigator, IPP Limited, was able to receive a piece of Plaintiff's copyrighted movie from each Defendant. In order for Plaintiff's investigator to have

received this piece, each alleged infringer must have had part of Plaintiff's movie on his or her computer and allowed others to download it.

There are four possible ways that each Defendant may have received the piece of the movie that was sent to IPP Limited.  First, the Defendant may have directly connected with the initial seeder and downloaded a piece of the file directly from the initial seeder's computer. Second, the Defendant may have directly connected to and received a piece of the movie from a seeder who downloaded the movie from the initial seeder or other infringers.  Third, the Defendant may have connected to or received a piece of the movie from other Defendants that received the movie from the initial seeder or other infringers.  Fourth, the Defendant may have connected to or received a piece of the movie from other infringers who downloaded from other Defendants, other infringers, other seeders, or the initial seeder.

"In other words . . . at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP."  *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *5 (E.D. Mich. 2012).  Each defendant participated in the same series of transactions.

> [E]ven if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied at this stage of the litigation the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.

*Raw Films v. John Does 1-15*, 2012 WL 1019067, at *4 (E.D. Pa. 2012).  These transactions are all reasonably related, not just because Defendants used BitTorrent, but also because Defendants utilized the computers of others to download the same file, and allowed others to access their computer to receive it.

4

### ii.  The Supreme Court Allows Joinder When The Defendants Do Not Directly Interact With Each Other

In *United States v. Mississippi*, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote.  Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact.  *Id.* at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color.  On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142.  Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, the defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers.  In doing so, the Defendants all acted under the same exact system.

### B.  The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.  Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for

5

an extended period of time.  Even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

*Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. 2012) (emphasis added). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

"While the period at issue may . . . appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time."  *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y. 2012).  Time constraints should not impact that the infringements occurred through a series of transactions.  "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. 2012).

## C.  There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Defendants to contain a common question of law or fact.  The claims in this case satisfy that requirement because "Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders."  *Nu Image, Inc. v. Does 1-3, 932*, 2012 WL

1255189 (M.D. Fla. 2012).  *See also Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 (E.D. Pa. 2012) ("Here, common questions of law and fact are present. Defendants are all accused of violating the same copyright laws. Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact. Consequently, we find that this low standard is satisfied."); *Patrick Collins Inc., v. John Does 1-43*, 2:11-cv-04203-FSH-PS (D. NJ 2012); *Call of the Wild Movie v. Does 1-1,062*, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011) ("factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant.")

### D.  Joinder is Proper Because Plaintiff Properly Pled Defendants Were Jointly and Severally Liable

Joinder is proper when a plaintiff pleads joint and several liability.  *See e.g. Genetic Technologies Ltd. v. Agilent Technologies, Inc.*, 2012 WL 1060040 (D. Colo. 2012) ("It is uncontested that Plaintiff does not assert joint or several liability here, which would be a separate basis for joinder.")  Rule 20(a) provides for "any right to relief jointly, severally, or in the alternative."  In this case Plaintiff pled both joint and several liability.

> Relief May be Sought "Jointly, Severally, or in the Alternative"**:** It is *not* necessary that each plaintiff or defendant be involved in every claim set forth in the complaint. Thus, for example, if there are several plaintiffs (e.g., driver and passenger in auto accident), each may seek *separate* relief. Likewise, if there are several defendants, relief may be sought against each of them separately, or against all of them jointly. [FRCP 20(a); *Dougherty v. Mieczkowski* (D DE 1987) 661 F.Supp. 267, 278]

*Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 7-D*.  "[C]oncert of action, *i.e.,* a right to relief jointly, is not a precondition of joinder. Plaintiff asserts a right to relief jointly against Defendants *and* severally.  Therefore, the first clause of Rule 20(a)(2)(A) is satisfied by the

assertion of a right severally." *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *8 (E.D. Mich. 2012).

By requiring Defendants to directly interact with each other, the Court would require the Defendants to be jointly liable with each other.   Because Rule 20 provides that a party may be joined if the claims against them are either jointly or severally liable, the requirement that defendants directly shared pieces of the movie with each other contradicts the language of Rule 20.

> A right to relief against defendants jointly requires concerted action by two or more parties. A right to relief severally against defendants means that each right to relief is separate and distinct from defendant to defendant and no interaction among the defendants is required. An 'alternative' right to relief may be asserted when plaintiff knows one of the defendants is liable, but does not know which one. *4 Moore's Federal Practice § 20.03*. Plaintiff asserts a right to relief against Defendants jointly and a right to relief severally; however, a right to relief against the Defendants severally alone is sufficient to satisfy the first clause of Rule 20.

*Id.* (Emphasis added).

### E.  The Middle District of Florida Has Previously Found Considerations of Joinder Premature at This Stage of Litigation

Notwithstanding that joinder is proper in this case, the Middle District of Florida has consistently held that considerations of joinder "are premature" and that only "[a]fter the Doe Defendants have been served, [may they] raise these issues." *See Malibu Media, LLC. v. John Does 1-19*, 3:12-cv-00335-UATC-MCR, *Report and Recommendation* [CM/ECF 37] p. 5.   *See also e.g. Malibu Media, LLC v. John Does 1, 3, and 11*, 2:12-cv-177-FtM-29SPC, Opinion and Order [DKT. 57]; *Malibu Media, LLC v. John Does 1-7, 11, 16, 17, & 21*, 3:12-cv-575-J-34TEM, Report and Recommendation [DKT. 29]; *Malibu Media, LLC, v. John Does 1-26*, 8:12-cv-1077-T-23-AEP, Order [DKT. 27]; *Malibu Media, LLC v. John Does 1-45*, 8:12-cv-1421-T-35AEP, Order [DKT. 48]; *Nu Image, Inc. v. Does 1-2,515*, 2:12-CV-109-FTM-29, 2012 WL

3042941 (M.D. Fla. June 29, 2012) *report and recommendation adopted*, 2:12-CV-109-FTM-29, 2012 WL 3043098 (M.D. Fla. July 25, 2012); *Malibu Media, LLC v. John Does 1, 3, and 11*, 2:12-cv-177FtM-29SPC, Opinion and Order [DKT. 57]; *Malibu Media, LLC v. John Does 1-25*, 2:12-cv-266-Ftm-29DNF, Report and Recommendation [DKT. 30]; *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-669-T-23AEP, Order [DKT. 25].

### F. Joinder Promotes Judicial Efficiency

This Court has previously recognized that "[t]he touchstone of the Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did." *Acciard v. Whitney*, 2008 WL 5120820 (M.D. Fla. 2008) (citing *Fisher v. Ciba Specialty Chemicals Corp.,* 245 F.R.D. 539, 542 (S.D.Ala.2007)).   As stated in Plaintiff's Complaint, joinder is proper because Plaintiff alleged that the Defendants are jointly and severally liable for the infringing activities of each of the other Defendants, the infringement was part of a series of transactions involving the exact same torrent file, and there are common questions of law and fact.  Indeed, the claims against each of the Defendants are identical and each Defendant has used BitTorrent to infringe Plaintiff's copyrighted works.  *See Plaintiff's Complaint* [CM/ECF 1].  "Given the common core of allegations, the substantial overlap of the particular claims, and the logical interconnection of several of the [claims]," judicial efficiency is best served by keeping the Doe Defendants joined together in a single case.  *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1325-26 (11th Cir. 2000) (*overruled on other grounds by Manders v. Lee,* 338 F.3d 1304 (11th Cir. 2003)).

Courts in this Circuit have repeatedly recognized that joinder of parties promotes judicial efficiency and prevents a duplication of judicial effort in cases where underlying facts and claims

are common to the joined parties even though each joined party is also subject to individualized facts and circumstances. In *Aaron v. Trump Org., Inc.*, 2010 WL 5058526 (M.D. Fla. 2010) *report and recommendation adopted,* 2010 WL 5057510 (M.D. Fla. 2010), a case involving fifty-two (52) joined plaintiffs with unique facts and circumstances for each plaintiff, the Honorable Judge Merryday adopted a report and recommendation which denied a motion to sever stating, "judicial economy will be served by allowing the joinder of the claims and parties. Denying Plaintiffs the opportunity to proceed collectively at this time would result in added time and delay, the filing of duplicitous suits, and duplicative discovery." *Id.*

*Fisher v. Ciba Specialty Chemicals Corp.*, 245 F.R.D. 539, 543 (S.D. Ala. 2007) held similarly noting that "[t]he Court anticipates that there will be substantial overlapping background evidence for all plaintiffs' claims." *Id.* The *Fisher* Court went on to recognize that separate trials would result in the presentation of the same expert witnesses in each trial and that this unnecessary repetition would be "financially foolhardy and needlessly wasteful of the parties' economic resources, potentially even rendering the[] trials cost-prohibitive." *Id.* Such a result would be a "drag on the efficient administration of justice . . . [and the] Court would be subjected to something akin to a judicial *Groundhog Day.*" Thus, the court ultimately found that it was "far preferable from a judicial economy standpoint to hear all of the evidence once, including both common and plaintiff-specific facts, in a single trial proceeding than to hear the common evidence five times, with plaintiff-specific testimony being confined to each plaintiff's individual trial." *Id. See also Agnew v. Roanoke Companies Group, Inc.*, 2010 WL 1740693 (S.D. Fla. 2010) (denying motion to sever noting that "[a]lthough the Plaintiffs individual experiences differ in some respects, their claims rely on the same core allegation[.]")

Similar to the cases cited directly above, Plaintiff's claims in the instant lawsuit contain facts that are common to all Defendants and also Defendant-specific facts.   Severing Doe Defendants and requiring Plaintiff to proceed individually against each Defendant would result in "duplicitous suits and duplicative discovery" because the claims against each Defendant arise out of the same series of transactions or occurrences.

> If the Court were to consider severance at this juncture, Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal file-sharers and this would only needlessly delay the case. Plaintiff would be <u>forced to file 2,590 separate lawsuits</u>, in which it would then <u>move to issue separate subpoenas to ISPs for each defendant's identifying information</u> . . . This would certainly <u>not be in the 'interests of convenience and judicial economy,'</u> or 'secure a just, speedy, and inexpensive determination of the action.' *Call of the Wild,* 770 F.Supp.2d at 334 (citation omitted)

*Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172 (N.D. Cal. 2011) (denying motion to sever in case involving 2,590 defendants) (emphasis added).  *See also Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 344 (D.D.C. 2011) ("joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants") (quoting *London–Sire Records, Inc. v. Doe 1,* 542 F.Supp.2d 153, 161 (D.Mass.2008)); *Patrick Collins, Inc. v. John Does 1-33*, 2012 WL 415424 (D. Colo. 2012) ("joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency."); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 at FN 6 (S.D.N.Y. 2012) ("courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts.")

### i. **Defendants' Differing Factual Circumstances, Motions, and Defenses Do Not Warrant Severance**

Although each Defendant may eventually assert different defenses and factual circumstances, this Court has previously held that joinder is regardless proper. "The Court recognizes that each Defendant may later present different factual and substantive legal defenses, but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." *K-Beech Inc., v. John Does 1-57*, Case 2:11-cv-00358-CEH-SPC, at *12 (M.D. Fla. 2011). Numerous courts have ruled similarly. *See e.g. Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa. 2012) ("consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy. Should that process reveal disparate defenses as to each party, the Court would consider such a fact relevant on a later review of joinder's propriety."); *Patrick Collins, Inc. v. John Does 1-15*, 2012 WL 415436 (D. Colo. 2012) ("[t]he Court reaches its conclusion fully aware of the numerous logistical and administrative challenges inherent in a case with this many putative defendants, many of whom may proceed *pro se*.") (quoting *Call of the Wild Movie,* 770 F.Supp.2d at 343); *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172 (N.D. Cal. 2011) (same, adding that "severing the putative defendants at this early stage is no solution to ease the administrative burden of the cases.")

In the hopes of being dropped from the litigation Doe Defendants often purposefully file numerous motions in an effort to overwhelm the courts. In practice, the majority of motions and arguments made boil down to essentially four types: (1) arguments stating that joinder is improper; (2) arguments asserting that the Doe Defendants have a First Amendment right to remain anonymous; (3) arguments stating that Plaintiff has failed to state a cause of action; and (4) arguments stating that the subpoena issued to the Doe Defendant's ISP should be quashed

12

because identifying an infringer by his/her IP address is improper. All of these arguments are wrong. Accordingly, once the Courts have properly addressed these issues for the first time, the majority of the work is complete. Later motions that assert the same arguments can be disposed of simply by referencing the earlier decision. Additionally, Plaintiff's counsel would be willing to write these short-form orders for the Court in order to alleviate the burden on the Court.

### G. Plaintiff Will Suffer Undue Prejudice if the Court Severs

Severing defendants prior to naming and serving them imposes on Plaintiff "significant obstacles in its efforts to protect its copyright from illegal file-sharers and . . . only needlessly delay[s] the case." *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172 (N.D. Cal. 2011). While the "putative defendants are not prejudiced but likely benefitted by joinder . . . severance would debilitate Plaintiff's efforts to protect its copyrighted material and seek redress from the Doe Defendants who have allegedly engaged in infringing activity." *Id.* Some courts have wrongly found that severing the defendants would not prejudice Plaintiff. Plaintiff respectfully disagrees.

First, as a practical matter, not every Doe Defendant will be identified through discovery. From Plaintiff's experience, approximately 10% of all Doe Defendants result in a discovery failure when the Internet Service Provider ("ISP") is unable to correlate an IP address with a person. Discovery failures increase over time. "Simply put, severance affects the timing of disclosure but not the underlying right. In this context, such a delay may prove fatal to Plaintiff's claims insofar as Plaintiff alleges that the information it seeks is subject to destruction." *Malibu Media v. John Does 1-6*, 2012 WL 3590906 (D. Colo. 2012).

Second, Plaintiff will often not pursue its claims against many Doe Defendants. As an example, once receiving discovery Plaintiff will learn that some Doe Defendants are active duty

military, a coffee shop with open wireless, or have some other circumstance that would prevent Plaintiff from pursuing its claims. This will inevitably reduce the number of Defendants joined together. Ultimately, if Plaintiff has to pursue each Defendant individually without knowing his or her identity, Plaintiff will be left with less latitude to evaluate cases and make reasonable resolutions including the decision not to prosecute.

Third, it is simply impossible for Plaintiff to pay a filing fee for each individual that infringes its movies on the Internet. The creators and owners of Malibu Media work tirelessly to create an artistic and unique product, which has evinced a significant demand. Malibu Media's business focuses around their online website X-Art.com. If one searches for X-art.com online, the official site will be followed by hundreds of illegal websites filled with unauthorized versions of Malibu Media's videos available for free. Malibu Media believes firmly that it must exercise its rights under the Copyright Act to prevent infringement. Otherwise, it faces an immediate and serious risk that its popular website will go out of business. It is simply impossible to compete with free.

In its efforts to fight piracy, the creators of Malibu Media invest significant resources in pursuing all types of anti-piracy enforcement such as Digital Millennium Copyright Act ("DMCA") take down notices and direct efforts aimed at infringing websites. Despite sending thousands of DMCA notices a day, the infringement continues. Malibu Media's movies are constantly illegally streamed and made available for download. Malibu Media does not seek to use the Court system to profit from the infringement like some courts have suggested. Instead, it seeks to use every legal right that has been granted to it under the United States Copyright Act to stop people from stealing its movies. It has no other choice. Plaintiff faces upwards of 60,000 infringements through BitTorrent per month. Without these suits, infringers would feel free to

take without consequence.   Accordingly, Plaintiff respectfully disagrees with the Honorable

Judge Whittemore's statement "severing these Doe Defendants and requiring filing fees

commensurate with the impact on the docket imposes no greater harm on Malibu than that

imposed on any other plaintiff in federal courts." *Media LLC v. John Does 1-28*, 8:12-cv-1667-

T-27MAP, Order [CM/ECF 22], p.13.   Very few plaintiffs in federal court face constant

pervasive harm to their business on a scale equivalent to that faced by Plaintiff.

### i.   Plaintiff Should Not Be Required to Pay a Filing Fee to Proceed Against Doe Defendants Individually

Malibu Media's goal is to successfully sue the most egregious infringers and at the same

time establish a significant deterrent for those tempted to take its products for free.   Since

January 2012, Malibu Media has provided the federal judiciary with $131,950.00 in federal filing

fees, an amount significantly more than many corporations.   Malibu Media seeks to sue roughly

600 individuals a month, or roughly one percent of the infringement it faces.   If it were forced to

pay filing fees for each defendant in that one percent, it would face filing fees of over $200,000 a

month.   This is simply beyond its financial capabilities as a company.

In order for its litigation to have any deterrent effect, Plaintiff must sue enough people for

an individual to have a reasonable belief that if they break the law, they will be penalized.

Indeed, the Digital Theft Deterrence Act of 1999 specifically amended the Copyright Act by

increasing the amount of statutory damages available to copyright infringement plaintiffs.   In

order for the Deterrence Act to have a deterrent effect, Plaintiff must be able to pursue its claims

against a significant number of infringers who steal its copyrighted works.   As the former

Register of Copyrights, Marybeth Peters stated to the Senate Judiciary, "whether or not these

infringers know or care that it is against the law, the knowledge that such conduct may lead to

expensive and burdensome litigation and a potentially large judgment should have a healthy

deterrent effect.  While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[1]

Recently, the District Court for the District of Columbia examined the issue of filing fees in copyright infringement cases in an evidentiary hearing on the issue of joinder.  "The Movant ISPs acknowledged that the plaintiff would not be able to protect its copyright if the Court were to sever the unknown defendants in this action due to the cost of filing an individual lawsuit for each of the thousands of IP addresses identified as being used for allegedly online infringing activity. Hearing Tr. at 127–28 (Apr. 27, 2012)."  *AF Holdings LLC v. Does 1-1,058*, 2012 WL 3204917 (D.D.C. 2012).   Judge Howell expressly found that individual filing fees would impossibly burden a plaintiff's Petition Clause right.

> Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses. <u>This burden for the plaintiff—not to mention the judicial system—would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity.</u> Moreover, such an outcome would certainly not be in the "interest of convenience and judicial economy," or "secure the just, speedy, and inexpensive determination of th[e] action." *Lane,* 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time being promotes more efficient case management and discovery" and no party was prejudiced by joinder).

*Id.* at *13.  (Emphasis added.)

The District Court for the District of Colorado has also addressed the issue of filing fees in copyright infringement actions and noted that requiring a plaintiff to pay the filing fees for each defendant limited its ability to protect its rights, contrary to Fed. R. Civ. P. 1.  *See Patrick Collins, Inc. v. John Does 1-15*, 2012 WL 415436 (D. Colo. 2012).

---

[1] *Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary* 108th Cong. (2003) *available at* http://www.copyright.gov/docs/regstat090903.html

If the Court were to sever the Doe Defendants at this juncture, Plaintiff would face significant obstacles in its efforts to protect the Work from copyright infringement, which would only needlessly delay the suit. Furthermore, <u>Plaintiff would need to file individual cases, which would require Plaintiff to pay the Court separate filing fees in each case, further limiting its ability to protect its legal rights.</u> *See* Fed.R.Civ.P. 1 (providing that the Federal Rules of Civil Procedure should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, Plaintiff would be substantially prejudiced by severance.

*Id.* at *3. (Emphasis added.)

### ii. Plaintiff is Not Using Joinder to Support an Improper Low-Cost Business Model

"Those addressing joinder as a threshold issue have noted that allowing a case to proceed against improperly joined defendants enables a plaintiff to obtain personal information and ultimately extract settlements with only a single filing fee.  Underlying this approach is a belief that the plaintiff's business model could not support separate lawsuits against each individual defendant." *Malibu Media, LLC v. John Does 1-22*, 1:12-cv-02598-REB-MEH, Order [CM/ECF 147] at p. 5.  "In this district, Plaintiff has repeatedly demonstrated its willingness to proceed against a single defendant . . . Because Plaintiff appears to sue individuals after it obtains their identities, the Court is not persuaded that severing defendants prior to discovery would deter Plaintiff from pursuing its claims."  *Id.*  Accordingly, although Plaintiff is able to bring some suits against individual Doe Defendants, the quantity of suits that Plaintiff could financially afford to bring would be significantly less if forced to litigate only against individual Does.  The desired deterrent effect necessary to sustain Plaintiff's business in the face of widespread theft would accordingly be significantly less and the infringement would continue unabated.

Plaintiff Malibu Media's founders invested their money into creating a website business.  That business has costs and employees.  People, like the Doe Defendants, are knowingly stealing Plaintiff's product entirely too often.   Plaintiff has a constitutional right under the Petition

Clause to sue its tortfeasors in an efficient way. Neither the proliferation of the number of lawsuits nor the content of the underlying works at issue should affect that constitutional right. The Honorable Magistrate Judge Hegarty of the District Court for the District of Colorado stated in open court on a hearing on a motion to quash in a very similar case that he "took an oath" to uphold and apply the law in an evenhanded and fair manner.

> I think some judges around the country are violating their oath by treating these cases in a way that is different than any other litigation filed because they just don't like it, they don't like the proliferation, they don't like maybe the subject matter . . . I do not feel the freedom to violate the Federal Rules of Civil Procedure and put undue burden on the plaintiff . . . so I've tried to be very careful in—in giving them the benefit of the law, which I have to because every— every entity that appears before the U.S. District Court is entitled to equal treatment, equal process . . . I have seen what I think is unnecessary hostility toward these cases . . . Congress created the law that gives Malibu Media the authority to bring lawsuits, and Congress can change the law, but in the meantime, the courts are limited to applying the law.

*Patrick Collins, Inc. v. Does 1-23,* 1:12-cv-01641-MSK-MEH (D. Colo. 2012), *Transcript of Hearing on October 10, 2012* (emphasis added) (Exhibit A). This Court should not intentionally nullify Plaintiff's rights. The only rational conclusion, if this Court applies the law to the facts, is that the claims against the defendants are logically related and the defendants may be jointly and severally liable for each-others' torts. This makes joinder proper as a matter of law. Accordingly, the Court's discretion should be used to sever cases only when the policies underlying the law weigh against joinder, not where joinder is proper. Defendants attempt to take advantage of the Court's discretionary authority by intentionally blanketing the docket with various motions in the hopes of frustrating the Court into severing the case. The Defendants should not be able to avoid liability in this manner. Indeed, the Court should not punish Plaintiff, regardless of the copyrighted content, for seeking to protect its property under the law.

Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore.  *See Sony v. Tennenbaum,* 660 F.3d 487, 497 (1st Cir. 2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online).   The Supreme Court has held file sharing of copyrighted works is infringement.   *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45 subpoenas may be used to identify online copyright infringers.   *See In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005); *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010).   Courts unanimously hold that Plaintiff's First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer.  *See e.g., Sony Music Entertainment, inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).

The only way to truly enforce one's copyrights against online infringement is to bring suits like the one currently before this Court.   Severing Defendants impermissibly burdens Plaintiff because it cannot bring the petitions that need to be brought.  Here, Plaintiff would simply be unable to afford even 1% of the individual actions against infringers each month. Plaintiff would not be able to effectively deter infringement.   With out this ability, copyright owners would have a right without a remedy.   Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." *Marbury v. Madison*, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).

III.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court permit joinder and not sever the Defendants in this action.

Dated: January 9, 2013

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB, EISENBERG & BAKER, PL
2 South Biscayne Blvd., Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*